Kathryn **REILLY** and Joseph Reilly, Plaintiffs–Appellants,

v.

**BLUE CROSS AND BLUE SHIELD UNITED OF WISCONSIN, a corporation, Defendant–Appellee.**

No. 87–2281.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1988.

Decided May 5, 1988.

Marjan R. Kmiec, Kmiec Law Offices, Milwaukee, Wis., for plaintiffs-appellants.

W. Charles Jackson, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge,
POSNER, Circuit Judge, and WILL,
Senior District Judge.[*]

WILL, Senior District Judge.

Kathryn and Joseph Reilly, plaintiffs-appellants, Wisconsin residents, brought this action against Blue Cross and Blue Shield United of Wisconsin ("Blue Cross"), defendant-appellee, a Wisconsin non-profit corporation, alleging that Blue Cross arbitrarily and capriciously denied their insurance claim for Mrs. Reilly's in vitro fertilization ("IVF"). The plaintiffs' original complaint claims that Blue Cross breached

the insurance contract, acted in bad faith, intentionally inflicted emotional distress and caused a loss of consortium. The plaintiffs seek compensatory and punitive damages.

Mr. Reilly is a Milwaukee public school teacher. He and his wife were covered under a self-insured group health plan which is part of the collective bargaining agreement between the Milwaukee Teachers Education Association ("MTEA") and the Milwaukee Public Schools ("MPS"). The plan was administered by Blue Cross for a fee "based, subject to certain limitations, on the dollar volume of covered charges approved for payment," Defendant–Appellee's Brief at 5. Blue Cross is not at risk for any health care costs.

Pursuant to Blue Cross' motion, the case was removed from the Waukesha County Circuit Court to the Eastern District of Wisconsin because it raises questions governed by the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001, *et seq.* Federal subject matter jurisdiction is based on 29 U.S.C. Sec. 1132(e).

Judge Curran ordered that nonexpert discovery be completed by January 1, 1987 and expert discovery by May 1, 1987. All dispositive motions were to be filed by June 1, 1987 and the trial was set for August 17, 1987. On June 1, 1987, Blue Cross moved for summary judgment against the plaintiffs' (1) ERISA claim, arguing that its decision to deny coverage was not arbitrary, capricious or motivated by bad faith, and (2) state law claims, arguing that these claims are preempted by ERISA. On June 30, 1987, the plaintiffs moved for leave to amend their complaint. They sought to add allegations of a conspiracy, fraud and breach of fiduciary duty based on newly discovered evidence allegedly concealed from them by Blue Cross.

Judge Curran granted Blue Cross' motion for summary judgment and denied the plaintiffs' motion to amend their complaint.

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation.

He concluded that (1) the defendant's decision was not arbitrary, capricious or motivated by bad faith; (2) ERISA preempted the plaintiffs' state law claims; and (3) even if state law claims were not preempted, he would not take pendent jurisdiction over them. The plaintiffs appeal both the decisions on the parties' motions and the preemption conclusion as to the claims for punitive damages and of bad faith.

We find that material issues of fact exist as to whether Blue Cross' decision was arbitrary, capricious or motivated by bad faith and we therefore reverse the district court's order granting Blue Cross' motion for summary judgment with respect to the plaintiffs' ERISA claim. Because the plaintiffs did not appeal the district court's order that their claims of intentional infliction of emotional distress and loss of consortium are preempted under ERISA, we do not review this decision and the district court's order dismissing these claims is affirmed solely on the ground that they are preempted. We find that the plaintiffs' demand for punitive damages and claim of bad faith are preempted under ERISA because the health plan at issue is self-insured and state laws arguably "regulating insurance" are preempted by ERISA as to self-insured plans. We therefore affirm the district court's order dismissing those claims. Finally, we find that amending the plaintiffs' complaint with claims of conspiracy, fraud, bad faith and breach of fiduciary duty would be futile because such claims are not separate federal causes of action but simply further evidence relevant to whether Blue Cross' action was arbitrary, capricious or motivated by bad faith in violation of ERISA. In addition, if considered as state claims, they are also preempted. We therefore affirm the district court's order denying the plaintiffs leave to file an amended complaint.

## FACTS

By 1978, Kathryn Reilly had received treatment for infertility. In 1982, she was diagnosed as having an independently treatable condition called endometriosis, which affects a woman's ability to conceive. Blue Cross paid for her initial treatments. Thereafter she was treated with artificial insemination, among other things, which was unsuccessful. On October 15, 1984, Mrs. Reilly underwent a successful IVF procedure at Waukesha Memorial Hospital in Wisconsin. On May 22, 1985, she gave birth to a baby girl, Nora.

The plaintiffs' insurance policy is outlined in two documents. One is a booklet distributed to plan members in January, 1981. It describes the benefits and exclusions. The other document is a group master contract which memorialized the agreement between the MPS and Blue Cross. This contract was renewed annually and, during the year following each renewal, a copy was forwarded to the MTEA. Individual group members did not receive a copy of this contract.

Blue Cross denied coverage for the expenses incurred by Kathryn Reilly's IVF procedure on the grounds that: (1) IVF was an experimental procedure, which was excludable under the master contract's general provision excluding experimental procedures; and (2) the contract specifically excluded coverage for an IVF procedure. Blue Cross claimed that the IVF was experimental under the general exclusion because it had a success rate of less than 50%. Blue Cross accepted the Reilly's claim for expenses incurred in the delivery of Nora, including intensive care.

The contract at issue was effective from July 1, 1984 to June 30, 1985. At the time of Mrs. Reilly's IVF, October 15, 1984, MTEA had not received the renewed contract for that period. According to the plaintiffs, as of October 1984, the MTEA was unaware of any exclusion under the master contract for IVF, either under the general provision excluding experimental procedures or as a specific exclusion.

Also, according to the plaintiffs, the MTEA first received notice that IVF procedures were excluded on September 19, 1985, long after the baby's birth in May and nearly one year after Mrs. Reilly's IVF. Notice was sent by Rhonda Koprowski, a Blue Cross supervisor, in a letter stating that "the wording in this contract

was updated in October of 1984 [the effective date is July 1, 1984]. Due to the timing of the services and the updating of the contract, the group may want to consider paying these charges as an exception." Marjan R. Kmiec Affidavit, June 16, 1987, Exhibit D. Blue Cross did not make an exception.

The district court assumed, for the purpose of its decision, that at the time of Kathryn Reilly's IVF, the parties were bound by the previous (1983–84) agreement which did not specifically list IVF either as being experimental or an excludable procedure. Accordingly, the district court assumed that the general provision in the 1983–84 contract excluding expenses for experimental and investigative procedures was the only provision under which Blue Cross could defend its decision. Our review is necessarily based on these same assumptions.

The 1983–84 contract's general provision excluding expenses for experimental and investigative procedures reads as follows:

> Services and procedures which are experimental/investigative in nature. Experimental/investigative means the use of any treatment, procedure, facility, equipment, drugs, devices or supplies not yet recognized as accepted medical practice by Blue Cross & Blue Shield United and any of such items requiring federal or other governmental agency approval and for which approval has not been granted at the time services were rendered.

Blue Cross claims that at the time of Kathryn Reilly's IVF, October, 1984, IVF was deemed experimental. The plaintiffs allege that IVF was not deemed experimental by the general expert medical community at the time of Kathryn Reilly's IVF and Blue Cross' formula employed to determine whether IVF is experimental leads to an arbitrary and capricious conclusion.

### STANDARD OF REVIEW

We must decide (1) if viewing the evidence in a light most favorable to the plaintiffs, there is a material issue of fact as to whether Blue Cross' decision was arbitrary, capricious or motivated by bad faith

and violated ERISA; *Rodeo v. Gillman*, 787 F.2d 1175, 1177 (7th Cir.1986); Fed.R. Civ.P. 56(c); (2) if the district court abused its discretion under Fed.R.Civ.P. 15(a) by denying the plaintiffs' motion for leave to amend their complaint; and (3) whether the plaintiffs' state law claims for bad faith and punitive damages are preempted under ERISA.

### LIABILITY UNDER ERISA

■ The plaintiffs' health plan is governed by ERISA. 29 U.S.C. §§ 1002(1) and 1003(a)(3). They may bring a civil action to recover benefits allegedly due under the plan. 29 U.S.C. § 1132(a)(1)(B). As the administrator of the employee benefit plan, Blue Cross is a fiduciary for ERISA purposes. 29 U.S.C. § 1002(21)(B); *Chicago Board Options Exchange, Inc. v. Connecticut General Life Insurance Company*, 713 F.2d 254, 258–60 (7th Cir.1983). Accordingly, Blue Cross' duties and responsibilities for managing and administering the plaintiffs' plan are defined as follows:

> (1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> ....
>
> (D) in accordance with the documents and instruments governing the plan....

29 U.S.C. § 1104(a)(1).

To hold Blue Cross liable for denying them benefits under the plan, the plaintiffs must establish that Blue Cross' decision or conduct was arbitrary, capricious or motivated by bad faith. *Wardle v. Central States Pension Fund*, 627 F.2d 820, 823–24

(7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) (pension benefits case). We may not undertake a *de novo* review as to whether we agree with Blue Cross' decision. *Id.* at 824.

> The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of [an ERISA fiduciary]. Nevertheless, the [fiduciary] must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' ... In reviewing that explanation, we must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' ... Normally, [a decision by a fiduciary] would be arbitrary and capricious if the [fiduciary] relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.

*Motor Vehicle Manufacturers Association of the United States, Inc. et al. v. State Farm Mutual Automobile Insurance Co. et al.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (citations omitted) (defining the arbitrary and capricious standard for a decision by a federal agency); *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985) (adopting the *Motor Vehicle* standard for an administrator of a pension plan under ERISA). *See also Dennard v. Richards Group Inc.,* 681 F.2d 306, 314 (5th Cir.1982) (the arbitrary and capricious standard for an administrator of a pension plan under ERISA may require an analysis of the following three factors: "(1) uniformity of construction; (2) 'fair reading' and reasonableness of that reading; and (3) unanticipated costs.").

## ANALYSIS

### I.

### Blue Cross' Decision

The plaintiffs contend that material issues of fact exist as to whether Blue Cross' administration of the plan was fair and reasonable because of the formula used to categorize IVF as experimental and in light of the evidence establishing that IVF was not in fact experimental in 1984. The plaintiffs submitted expert opinions from several doctors, including members of the American College of Obstetricians and Gynecologists and the American Fertility Society, in addition to three other fertility experts, who stated that by 1982, IVF procedures were no longer experimental. In addition, government approval was not required prior to performing an IVF procedure in October, 1984.

The affidavit of K. Paul Katayama, M.D., Ph.D., a member of the medical staff of Waukesha Memorial Hospital, Good Samaritan Medical Center, and other Milwaukee area hospitals, and one of the plaintiffs' experts, included the following:

> 5. The leading international professional organization in the field of reproductive endocrinology is the American Fertility Society. In March of 1982, the Board of Directors and members of the American Fertility Society unanimously concluded that IVF must be recognized as an acceptable treatment for achieving pregnancy.

> 6. In April of 1984, the Committee on Gynecologic Practice for the American College of Obstetricians and Gynecologists issued a statement on IVF/ET [in vitro fertilization/embryo transfer]. It stated:

>> Today in the United States, human IVF/ET is a clinically applicable procedure. It is no longer considered purely experimental.

> 7. In October of 1984, I did not consider IVF/ET to be an experimental procedure, nor do I consider it so at this time. In my opinion, human IVF/ET ceased being an experimental procedure by 1982. IVF was well accepted within the medical community in 1984.

> 8. I am aware that Blue Cross Blue Shield United of Wisconsin continued to characterize IVF as experimental until at

least October, 1985. No practitioners intimately involved in the field of IVF, as far as I know, characterized IVF as experimental at the time. In my opinion Blue Cross' characterization of IVF as experimental in 1984 and 1985 was unreasonable.

Katayama Affidavit, June 16, 1987. Dr. Katayama has an extensive and impressive curriculum vitae and his qualifications as an expert in the field of IVF have not been challenged.

The affidavit of Gloria M. Halverson, M.D., a member of the medical staff at Waukesha Memorial Hospital and Elmbrook Memorial Hospital, and another plaintiffs' expert, included the following:

5. That your affiant did not consider IVF to be an experimental procedure in 1984. That in your affiant's opinion, IVF ceased being an experimental procedure in 1982. That IVF is a well accepted procedure within the medical community and was in 1984.

6. That your affiant is aware that Blue Cross Blue Shield United of Wisconsin continued to characterize IVF as experimental until at least October, 1985. That no practitioners intimately involved in the field of IVF, that your affiant is aware of, characterized IVF as experimental at that time and Blue Cross' characterization as experimental is unreasonable.

Halverson Affidavit, June 15, 1987. Dr. Halverson also has an extensive and impressive curriculum vitae and her qualifications as an expert in the field of IVF have not been challenged.

The plaintiffs also proffered the deposition testimony of Dr. Sander S. Shapiro, the Director of the Reproductive Endocrine Infertility Clinic in Madison.

Q: Were you aware of any statement by the American College of Obstetricians and Gynecologists on in vitro fertilization when you began the program [at the Madison clinic] in 1982?

\* \* \* \* \* \*

A: My recollection is that the statement expressed the observation that this was a procedure that was beyond the purely experimental, but that like so much of the rest of medicine, improvements would be made through further experimentation.

\* \* \* \* \* \*

A: My recollection is that the College statement was one that in essence corroborated my own feelings and impressions about the procedure.

\* \* \* \* \* \*

Q: And what were the circumstances of that meeting in 1984 [with Blue Cross/Blue Shield of Milwaukee concerning IVF charges]?

A: I was asked whether I would come to the Blue Cross offices with a number of other physicians and describe in vitro fertilization procedures to the group.

\* \* \* \* \* \*

A: I remember that the people from the insurance organization were concerned about the eventual costs to insurance organizations of the procedure.

Q: And were there questions asked about the status of the procedure as you perceived it, what were the protocols of the procedure?

A: I don't think anybody got into exact protocols. I do recall that people asked whether this was a procedure that was beyond the realm of experimentation, and my answers were at that time very much that it was beyond the sole realm of experimentation.

\* \* \* \* \* \*

Q: Now, Mrs. Reilly received her IVF treatment in October of 1984. What's your opinion of the IVF treatment at that point insofar as whether it was experimental or investigational?

A: I think that it clearly was a procedure in 1984 that could be offered as a strictly clinical therapeutic procedure.

Q: Were any aspects of that procedure in your opinion experimental or investigational at that point?

A: I think that like all of medicine, it is always investigational and experimental in the sense that we have a potential for

doing better and should investigate that potential.

Dr. Sander Shapiro Deposition, May 26, 1987, at 41–47, 49, 52.

In contrast, Blue Cross did not submit any affidavit or deposition testimony from anyone with personal knowledge about IVF procedures indicating that IVF was experimental in 1984. Blue Cross proffered the deposition testimony of Edward Seitz, Blue Cross Assistant Vice President, Political Subdivision–Business for Blue Cross, that Blue Cross decided that IVF was an experimental procedure because its success rate was less than 50%. Seitz testified that Blue Cross' decision was based on information provided by the National Blue Cross and Blue Shield Association ("National Association") and its own Blue Cross and Blue Shield United Medical Review Committee ("Medical Review Committee").

Seitz spoke with Bev Krutz, an Assistant Vice-President of the Blue Cross Medical Review Board, and she told him how Blue Cross determined that IVF was experimental.

Q—And what did Bev Krutz tell you?

A—She told me in essence that the determination has been established that the success rate is less than 50 percent, and that the position of the Informational Blue Cross–Blue Shield Association, that it is still experimental and in the developmental stages, and also that's of our own Medical Review Department and, therefore, is not a covered service under the contract.

Q—Now when she told you that the success ratio of the procedure was less than 50 percent, did she give you any indication of what kind of documentation she was relying upon to make that determination?

A—She may have but I don't recall.

Q—And you've made some reference to both the National Blue Cross and Blue Shield Association and the Blue Cross and Blue Shield United Medical Review Committee?

A—Yes.

Q—Can you tell me what the National Blue Cross and Blue Shield Association is?

A—This is an association that all Blue Cross plans and all Blue Shield plans belong to. We do it on a voluntary basis, although they do have jurisdiction and say over who can use and cannot use the logos and the name of Blue Cross and Blue Shield. It's a servant of all of the plans in my view in that they are resource people. They are in the position to gather statistics, have broad knowledge in the medical field and make determinations and recommendations to each of the plans, and there are 78 Blue Cross plans and almost an equal number of Blue Shield plans throughout the country.

Q—Did you ever have any personal contact with that association?

A—*Not in this regard.* It would be for marketing purposes.

\* \* \* \* \* \*

Q—As a result then of your conversation with Bev Kurtz, you then wrote this letter which is Exhibit 1 page 2 to Mr. Cavallaro [an MTEA official] right?

A—Right.

Q—And in that letter you concluded that IVF is a noncovered procedure for the reasons that we've gone through?

A—This is correct.

Seitz Deposition at 8–11 (emphasis added).

After briefly summarizing the deposition testimony and affidavits submitted by the plaintiffs, the district court granted the defendant's motion for summary judgment based on the following analysis:

The court now turns to the specific exclusion at issue. The language in the exclusion exempts experimental procedures "not yet recognized as accepted medical practice by Blue Cross & Blue Shield United ..." At deposition, Edward Seitz, Assistant Vice President, Political Subdivision–Business for Blue Cross, testified that he contacted the medical review committee, which is maintained jointly by Blue Cross–Blue Shield plans across the country and was told that the determination had been made

that the success rate of in vitro fertilization procedures was less than fifty percent, and that it was thus considered to be experimental and in the developmental stages. The medical review committee is composed of physicians who guide and provide expert opinion and "consider the recommendations of the medical review policy at the company with regard to new procedures, fees, etc." The plaintiffs argue that the court ought not consider this because rate of success is not determinative in other procedures such as those which are life threatening. The court disagrees. As I've stated previously, my review is focused solely on whether the denial of benefits was arbitrary, capricious, or motivated by bad faith. A review of the evidence submitted by the plaintiffs on this issue simply does not rise to the level where I can find that there is a genuine issue of material fact present. I have accordingly determined to grant summary judgment to the defendant.

District Court Decision And Order at 7–8.

It should be noted first that Seitz testified he relied solely on what Bev Krutz, another Blue Cross employee told him. The district court apparently simply accepted Blue Cross' conclusion based on Seitz' hearsay testimony. No expert testified that in 1984 IVF was experimental and no comparison with the plaintiffs' experts' testimony was made. In addition, the validity of Blue Cross' rationale, the success ratio, was not reviewed.

A decision may be arbitrary and capricious if Blue Cross "offered an explanation for its decision that runs directly counter to the evidence before [it]...." *Motor Vehicles,* 463 U.S. at 43, 103 S.Ct. at 2867. The evidence proffered by the plaintiffs' experts runs counter to Blue Cross' decision and creates a material issue of fact as to whether Blue Cross' decision was arbitrary, capricious or motivated by bad faith. We do not suggest that, faced with equally conflicting evidence that IVF was or was not experimental in October, 1984, Blue Cross would necessarily face liability. However, the question of whether Blue Cross' decision was arbitrary, capricious or

motivated by bad faith remains a disputed question of fact in light of the substantial contradictory evidence, as well as the reasonableness of employing a success ratio per se, particularly the 50% ratio used. These questions were not addressed by the district court.

Based on the district court's analysis, Blue Cross could immunize itself from liability for its decisions as a plan administrator simply by creating a plan which provides that it will deny claims for medical procedures if Blue Cross' internal advisory committees deem them experimental. ERISA's provisions do not permit such potential abuses; decisions and their rationales are reviewable. In this case, the reasonableness of the decision to characterize IVF as experimental is ultimately Blue Cross' responsibility.

The fact that Blue Cross allegedly relied on the advice of its own advisory groups who presumably assist Blue Cross in the administration of its health plans nationwide, those for which it is also an insurer, creates an inherent risk of abuse. Moreover, we do not have here direct evidence that Blue Cross medical review committees found IVF experimental in 1984, only Seitz' statement that Krutz, another Blue Cross employee, had told him so. Dr. Shapiro noted that Blue Cross, understandably, was concerned with the cost of IVF. When Blue Cross sought his independent advice, however, he gave them a different conclusion than they reached.

The plaintiffs contend that a procedure's success ratio alone cannot determine whether it is experimental and material issues of fact exist as to whether the decision to classify procedures apparently based on this factor alone is arbitrary and capricious. Otherwise, they contend, Blue Cross has too much discretion and could deny coverage, for example, for treatments administered to terminally ill patients. A success ratio for such treatments might well approach 0%.

Not only may the decision to grant or deny coverage based solely on a success ratio per se be arbitrary and capricious, but

the particular ratio selected, in this case, for IVF, may well be arbitrary and capricious. No evidence was presented to the district court on either of these questions.

Dr. Shapiro's testimony concerning whether IVF was deemed experimental in 1984 may have been misinterpreted by the district court. He stated that "I think that like all of medicine, it is always investigational and experimental in the sense that we have a potential for doing better and should investigate that potential." Dr. Sander Shapiro Deposition at 52. The context of the district court's opinion in which this statement by Dr. Shapiro is cited suggests that the district court interpreted his testimony as support for Blue Cross' decision that IVF was experimental. District Court Decision And Order at 6–7. This interpretation leads to the conclusion that Dr. Shapiro's testimony was that *all* medical procedures are experimental. This strains Dr. Shapiro's testimony beyond logic, particularly when he stated that he had advised Blue Cross in 1984 that IVF was very much "beyond the sole realm of experimentation."

At oral argument the defendant's attorney suggested that the specific formula used by Blue Cross in the context of IVF procedures may differ from that employed for treatment for terminally ill cancer patients. The plaintiffs' complaint alleges that Blue Cross does not use a success ratio for "treatment of other diseases (heart, cancer, etc.)." Plaintiffs' Complaint at para. 7(c). The defendant's answer, however, denied these allegations and stated simply "that payments were made in accordance with the benefits provided under the employee benefit plan." Defendant's Answer at para. 7. This is obviously a disputed issue of material fact. In addition, as noted, several other material issues of fact exist as to whether the use of a success ratio in and of itself is arbitrary and capricious.

Blue Cross also suggests that because the plan at issue is self-insured, it has no risk and thus no incentive to deny claims which could lead to arbitrary and capricious decisions. That is not necessarily true. In the long run, if Blue Cross were to grant too many claims, as perceived by MPS, it might be replaced as the plan's administrator. Moreover, the ultimate issue in the case is whether Blue Cross acted arbitrarily and capriciously, not whether it had an incentive to do so.

In addition to the unresolved issues we have already noted, several other questions which remain include the following: (1) Who made the ultimate decision by Blue Cross that IVF is experimental? (2) What are their qualifications and on what basis was that decision made? (3) How many IVF procedures were analyzed to make this conclusion? (4) What other evidence was reviewed by the decisionmakers which suggested that it was not experimental? (5) How are the decisionmakers compensated by Blue Cross? (6) How did this decision affect other Blue Cross health plans?

Notwithstanding the deferential standard given to the administrator of an ERISA health benefit plan, there are clearly disputed material issues of fact as to the basis of the defendant's decision and whether it was arbitrary, capricious or motivated by bad faith. Accordingly, the district court's order granting the defendant's motion for summary judgment with respect to the plaintiffs' ERISA claim is reversed.

## II.

*Are the Plaintiffs' State Law Claim of Bad Faith And Demand For Punitive Damages Preempted by ERISA?*

■ In its order the district court concluded that the plaintiffs' state law claims were preempted by ERISA or, alternatively, were without an independent basis for jurisdiction and he declined to take pendent jurisdiction.

I have reviewed the proposed amended complaint which the plaintiffs would have this court accept. Having determined that the plaintiffs' state law claims are preempted by ERISA, I have determined that to permit the plaintiffs leave to amend would be futile. Those portions of the claim which are preempted would be subject to summary disposi-

tion under the above rationale. Those state claims which remain would be pendent and, there being no diversity between the parties, would be declined by the court as pendent.

District Court Decision And Order at 8. The district court's opinion provides no analysis and cites no ERISA provisions on the preemption issue.

With respect to the state law claims in their original complaint, the plaintiffs challenge the district court's preemption conclusion only as to their claim for bad faith and demand for punitive damages and they argue that pendent jurisdiction is appropriate. We therefore affirm the district court's dismissal of the plaintiffs' claims of intentional infliction of emotional distress and loss of consortium, on the theory that these claims are preempted under 29 U.S.C. § 1144(a). *See Metropolitan Life Insurance Company v. Taylor*, — U.S. —, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Whether or not the plaintiffs' claims of fraud, breach of fiduciary duty and conspiracy, claims with which they sought to amend their complaint, are preempted will be addressed in section *III, infra.*

ERISA is a comprehensive scheme regulating health and benefit plans. ERISA's "preemption clause" provides as follows:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws in so far as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a). ERISA's "savings clause" provides as follows:

Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking or securities.

29 U.S.C. § 1144(b)(2)(A). The savings clause is modified by the so-called "deemer clause":

Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, ... or to be engaged in the business of insurance ... for the purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

If a plan purchases insurance, as opposed to being self-insured, it is "directly affected by state laws that regulate the insurance industry." *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). In *Metropolitan Life Insurance Co. v. Massachusetts*, the Court was faced with a Massachusetts statute requiring that all insurance contracts affecting Massachusetts citizens or written in Massachusetts provide minimum mental health coverage. *Id.* at 727, 105 S.Ct. at 2383. The statute applied to both insured (those that purchase insurance) and noninsured (self-insured) plans. *Id.* at n. 14, 105 S.Ct. at n. 14. The state argued that its law, as applied to insured plans, was not preempted by ERISA. The Court noted that Massachusetts was in effect acknowledging that its statute as applied to self-insured plans would not be saved from preemption because of the "deemer clause." *Id.*

We need not decide whether Wisconsin law concerning punitive damages and bad faith "regulates insurance." In this case, the plan administered by Blue Cross is self-insured. It is entirely funded by the MPS and MTEA. Neither entity is an insurer and, accordingly, the deemer clause applies. The benefit plan, therefore, cannot avoid preemption. In addition, although Blue Cross is a national insurance company, in this context it is acting simply as an administrator of a self-insured plan.

We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By doing so we merely give life to a distinction created by Congress in the

'deemer clause,' a distinction Congress is aware of and one it has chosen not to alter.

*Id.* 105 S.Ct. at 2393 (footnote omitted). Accordingly, the district court's order dismissing the plaintiffs' state law claims and demand for punitive damages in their original complaint is affirmed because they are preempted by the remedial provisions of ERISA. We need not review the district court's alternative holding that taking pendent jurisdiction is inappropriate.

## III.

### Plaintiffs' Motion For Leave To Amend Their Complaint

■ The plaintiffs engaged in further discovery following the filing of Blue Cross' motion for summary judgment and moved to amend their complaint to include newly discovered information. The plaintiffs contend that they discovered that Blue Cross had unilaterally and without notice retroactively modified the group master contract and that the specific exclusions in the 1984–85 contract relied upon to deny coverage were not in effect at the time of Mrs. Reilly's IVF. Plaintiffs' Amended Complaint para. 10–11. Specifically, the plaintiffs contend that any exclusions relied upon by Blue Cross were not validly inserted into the contract and that any claim of Blue Cross' egregious conduct is not preempted by ERISA. The amended complaint adds claims of conspiracy, fraud and breach of fiduciary duty. Plaintiffs' Amended Complaint para. 26–30.

Judge Curran's opinion addressed this issue in one paragraph as noted above. District Court Decision And Order at 8. It is unclear whether by referring to "the above rationale" Judge Curran meant that the plaintiffs' new allegations are preempted by ERISA, do not constitute arbitrary or capricious action or, since he applied the 1983–84 contract, they are irrelevant.

In any event, these alleged new facts are simply further *evidence* relevant to whether or not Blue Cross' action was arbitrary, capricious or in bad faith in violation of ERISA. They do not allege a new or separate federal cause of action. The plain-

tiffs' complaint need not be amended to make this evidence admissible at trial. So far as state claims for breach of fiduciary duty, conspiracy, fraud or bad faith are concerned, they are, as Judge Curran found, all preempted by ERISA. *See Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Pilot Life Ins. Co. v. Dedeaux,* —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Accordingly, the motion to amend the complaint was properly denied since it added no additional federal claims but merely pleaded additional evidence relevant to the already pending ERISA claim.

## CONCLUSION

Because we find that there are numerous disputed material issues of fact regarding whether Blue Cross' decision to deny the plaintiffs' coverage for IVF was arbitrary, capricious or motivated by bad faith, we reverse the district court's order granting Blue Cross' motion for summary judgment with respect to the plaintiffs' ERISA claim. The plaintiffs do not appeal the district court's dismissal of their state law claims for intentional infliction of emotional distress and loss of consortium and we therefore affirm the district court's order on the ground that these claims are preempted. We find that the plaintiffs' state law claim of bad faith and demand for punitive damages are also preempted under ERISA and we affirm the district court's dismissal of these claims on this ground alone. Finally, because the proposed amended complaint alleges no new federal claim but merely asserts additional evidence relevant to the pending ERISA claim, and any state claims in the proposed amended complaint of breach of fiduciary duty, conspiracy, fraud or bad faith are preempted by ERISA, the denial of their motion for leave to file an amended complaint is also affirmed.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.

POSNER, Circuit Judge, concurring and dissenting.

I would affirm the district judge's decision in its entirety. There is no basis for

supposing that Blue Cross of Wisconsin (as I shall call the defendant) acted arbitrarily or capriciously in denying Mrs. Reilly's claim. She underwent in vitro fertilization in 1984, at a cost of something under $3,000. The employee benefits plan under which she seeks to recoup this expense excludes "services and procedures which are experimental/investigative in nature," defined as any treatment "not yet recognized as accepted medical practice by" Blue Cross of Wisconsin. In deciding that in vitro fertilization was still an experimental procedure in 1984, and in denying her claim on that ground, the defendant consulted both its own medical advisory committee and a national association of Blue Cross–Blue Shield plans that evaluates and makes recommendations concerning medical procedures. Both groups advised it that in vitro fertilization, in part because of its success rate (below 50 percent, and perhaps as low at 10 percent), was still experimental.

The denial of benefits may be right or wrong but it is a reasonable interpretation of the plan, and that should be the end of the case. Judge Will, skilled lawyer that he is, is able to find a number of holes in the defendant's case—hearsay, lack of expert evidence to counter Mrs. Reilly's experts (with their impressive credentials), and the implausibility of classifying a procedure as experimental merely because it has a low success rate (implying, if pushed to a logical extreme, that all treatments for the terminally ill are experimental). And he is able to conjure up a host of unanswered questions concerning the qualifications of the members of the advisory committees, the committees' evidentiary basis, the method of compensating their members, and the impact of the decision on other Blue Cross–Blue Shield plans. Judge Will even questions the validity, as well as the defendant's interpretation, of the "experimental/investigative" provision—although Mrs. Reilly does not—on the ground that it gives too much discretion to the defendant.

All this probing and questioning would be fine if this were a suit for breach of a contract of insurance rather than an action for judicial review of the denial of a claim for employee benefits, if the burden of proof in a breach of contract suit were on the defendant rather than the plaintiff, and if the plaintiff in such a suit were arguing unconscionability. None of these things is true. Not only has Judge Will disregarded our role in this proceeding, the nature of the proceeding, the standard of review, and the burden of proof, but he has gone beyond the issues framed by the parties, since as I have said Mrs. Reilly does not question the validity of the "experimental/investigative" provision, but only its application to her claim.

The administrators of Blue Cross of Wisconsin are in no position to make a personal judgment on whether in vitro fertilization is an experimental procedure. They must consult experts. They consulted two expert bodies: their own medical advisory committee, and a national association of Blue Cross–Blue Shield groups that serves as a clearinghouse for medical information. On the face of things this seems a reasonable way to have proceeded. If Mrs. Reilly thought that these expert bodies were prejudiced or incompetent, she could have deposed their members; it was her responsibility, if she wanted to defeat the defendant's motion for summary judgment, to answer the unanswered questions noted by Judge Will. Instead of questioning the qualifications of the members of the advisory bodies on which the defendant relied, she presented affidavits by physicians who believe that in vitro fertilization had by 1984 moved beyond the experimental stage. As it happens these physicians are specialists in the treatment of fertility and naturally want to encourage the use of an exciting and promising treatment. All that their affidavits show, however, is that there is a difference of opinion in the medical community on the experimental character of the treatment. The existence of such a disagreement does not begin to demonstrate that Blue Cross of Wisconsin acted arbitrarily or capriciously in relying on its medical advisors.