Noe J. SILVA, Appellant,

v.

AETNA LIFE INSURANCE COMPANY, Appellee.

No. 13–90–147–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 24, 1991.

Rehearing Overruled March 14, 1991.

James B. Ragan, Corpus Christi, for appellant.

Ken Dahlberg, Wood, Burney, Cohn & Bradley, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a summary judgment. Appellant, Noe J. Silva, sued appel-lee, Aetna Life Insurance Company, for wrongfully refusing to pay his medical bills. Silva alleges that Aetna violated sections 1104(a) and 1109 of the Employee Retirement Income Security Act (ERISA) [1] and article 21.21 of the Texas Insurance Code. The trial court granted summary judgment favorable to Aetna. By two points of error, Silva complains that the trial court erred in holding that Aetna had not acted arbitrarily and capriciously and that ERISA pre-empted his state law claims. We affirm the trial court's judgment.

Silva's suit alleges that Aetna issued a health insurance policy to Baker Marine Corporation. On or about August 1, 1983, he injured his foot while at work for Baker Marine. He required medical attention which was payable pursuant to the policy's terms. Aetna, however, has refused to pay his medical bills. Silva asserts that Aetna "failed to provide benefits with the care, skill, prudence and diligence that a prudent man acting in like capacity would have done in the same or similar circumstances" in violation of ERISA. He also alleges that Aetna failed "to timely and properly pay benefits and representing [sic] that an insurance agreement confers rights and remedies which it does not" in violation of the Texas Insurance Code.

Aetna's summary judgment motion alleges that Aetna did not act arbitrarily and capriciously in denying Silva benefits. It also alleges that section 1144(a) of ERISA pre-empts Silva's state law claims. Further, Silva has no standing to sue under section 1109 of ERISA because this section only inures to the benefit of the plan as an entity and not to the individual beneficiary. As a separate ground for summary judgment, Aetna alleges that the evidence shows that Silva's alleged injury occurred in the course and scope of his employment. The Aetna insurance plan does not provide coverage for occupational injuries.

1. See the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq., (1985).

Aetna's summary judgment proof includes Jerry Von Tungeln's affidavit, the insurance policy between Aetna and Baker Marine (the Aetna plan), a "MEMORANDUM FOR THE RECORD," and an "EMPLOYER'S FIRST REPORT OF INJURY OR OCCUPATIONAL ILLNESS." Tungeln, Baker Marine's vice-president, declares that on August 1, 1983, Baker Marine employed Silva as a "yard hourly employee." On August 9, 1983, Silva reported to Baker Marine that on August 1, 1983, he injured his left foot while climbing a ladder at Baker Marine during regular working hours. Prior to August 1, 1983, Aetna issued a group insurance policy to Baker Marine which provided accident and health benefits to its employees for non-occupational injuries and diseases. Baker Marine administrated this policy plan.

The Aetna insurance policy states, in pertinent part, that unless otherwise specified, the accident and health coverage provided is non-occupational. The policy also says that "[a]n injury is considered non-occupational only if it is an accidental bodily injury and does not arise out of (or in the course of) any work for pay or profit nor, in any way, results from an injury which does."

The "MEMORANDUM FOR THE RECORD" states that on August 9, 1983, Silva told Joe E. Carrales, III, at Baker Marine's safety department that he had a non-occupational injury to his left foot. He said that as a result of his work at Baker Marine, he had aggravated the injury.

The "EMPLOYER'S FIRST REPORT OF INJURY OR OCCUPATIONAL ILLNESS" indicates that Silva reported his injury under the Longshoremen's and Harbor Workers' Compensation Act. The report shows that Silva, while at work for Baker Marine, aggravated a non-occupational injury to his left foot. According to this report, Silva injured his foot over three years prior to the date of the report. The report is dated August 9, 1983.

Silva's response states that ERISA does not pre-empt his state law claims under the Texas Insurance Code. He maintains that section 1144(b) of ERISA exempts his state

law claims from the pre-emption provision. Additionally, Silva states that the evidence shows that his injury was not job related. Thus, Silva claims, there is a fact issue whether the Aetna plan covers his medical expenses.

Silva's summary judgment proof includes the Honorable James B. Ragan's affidavit, an "APPLICATION FOR APPROVAL OF AGREED SETTLEMENT" and a letter signed by Thomas L. York, M.D. Ragan declares that he represented Silva in his claim for longshoremen's benefits. According to Ragan, attachments to his (Ragan's) affidavit show that during the course of the longshoremen's claim, evidence was discovered proving that no cause or relationship existed between any work activity and Silva's surgery need. Ragan states that "[a]s a result of this evidence, the case in question was settled for a nominal amount with the agreement between Plaintiff [Silva] and employer [Baker Marine] that due to the fact that the injuries were not work related it would then be covered by the employer's group health insurance."

The "APPLICATION FOR APPROVAL OF AGREED SETTLEMENT" includes an "AGREED STATEMENT OF FACT." This agreed statement indicates that Silva "was climbing a ladder which aggravated an old injury to his foot."

Dr. York states that he examined Silva on March 4, 1984, regarding an injury to his left foot. He found a severe lesion on the sole of Silva's left foot. Silva told Dr. York that he injured this foot when, as a boy, he stepped on a broken fruit jar. Dr. York says that Silva "had this prior to going to Baker Marine and admits to trouble prior to that time."

■ The trial court granted Aetna's summary judgment motion and ordered that Silva take nothing against Aetna. In reviewing a summary judgment record, this court must determine whether a disputed material fact issue exists that would preclude a summary judgment. *Gonzales v. Mission America Insurance Co.,* 33 Tex.Sup.Ct.J. 697–98 (Sept. 6, 1990); *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868

(Tex.1984). Every reasonable inference must be indulged in the non-movants' favor, and any doubt resolved in their favor. *Wilcox v. St. Mary's University*, 531 S.W.2d 589, 593 (Tex.1975). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Tucker v. Atlantic Richfield Co.*, 787 S.W.2d 555, 557 (Tex.App.—Corpus Christi 1990, writ denied).

■ By point two, appellant complains that the trial court erred in holding that ERISA pre-empts his state law claims under the Texas Insurance Code. ERISA contains a broadly worded pre-emption provision found in 29 U.S.C. § 1144(a) (1985)[2]. This section provides, in relevant part:

> Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

The saving clause, 29 U.S.C. § 1144(b)(2)(A) (1985), (emphasis ours) provides, in relevant part, that "[e]xcept as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which *regulates insurance* ...."

The United States Supreme Court has held that all state common-law causes of action which "relate to" an employee benefit plan fall under ERISA's express pre-emption provision. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). Three Texas intermediate appellate courts have adopted this same precedent. *See Cadillac Insurance Co. v. L.P.C. Distributing Co.*, 770 S.W.2d 892, 894–95 (Tex.App.—San Antonio 1989, no writ); *Cathey v. Metropolitan Life Insurance Co.*, 764 S.W.2d 286, 290 (Tex.App.—Houston [1st Dist.] 1988, writ granted);[3] *Gorman v. Life Insurance Co. of North America*, 752 S.W.2d 710, 712–14 (Tex.App.—Houston [1st Dist.] 1988, writ granted).[4]

In the instant case, it is undisputed that Silva's state law claims "relate to" an employee benefit plan falling within ERISA's purview. Silva's argument against pre-emption hinges upon ERISA's saving clause. He maintains that the Texas Insurance Code is a state law which "regulates insurance;" therefore, ERISA does not pre-empt his state law cause of action.

In *Pilot Life*, the United States Supreme Court examined ERISA's civil enforcement mechanism, § 502(a), 29 U.S.C. § 1132(a) (1985),[5] and explained that Congress intended this section to be the exclusive remedy for rights which ERISA guarantees. The Court said:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement

---

**2.** Section 1144(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefit law. The goal was to minimize the administrative and financial burden of complying with conflicting directives among states or between states and the federal government. Otherwise, the inefficiencies created might work to the plan beneficiaries' detriment. *Ingersoll–Rand Co. v. McClendon*, — U.S. —, —, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990).

**3.** Writ granted in 33 Tex.Sup.Ct.J. 36 (Oct. 21, 1989).

**4.** Writ granted in 33 Tex.Sup.Ct.J. 36 (Oct. 21, 1989).

**5.** This section provides, in relevant part:

> A civil action may be brought—
> (1) by a participant or beneficiary—
> (A) for the relief provided for in subsection (c) of this section, or
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [liability for breach of fiduciary duty];

scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." [citation omitted].

*Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556.

· Silva's state law cause of action alleges that Aetna failed to properly pay benefits and that it represented that the insurance agreement conferred rights and remedies not contained therein. The failure to pay benefits allegation falls squarely within 29 U.S.C. § 1132(a)(1)(B). The misrepresentation allegation is akin to a suit for breach of fiduciary duty. This allegation falls within 29 U.S.C. § 1132(a)(2). We hold that ERISA pre-empts Silva's state law causes of action under the Texas Insurance Code.

By point one, Silva complains that the trial court erred in holding that Aetna had not acted arbitrarily and capriciously. Silva asserts that Aetna's conduct violated 29 U.S.C. § 1104(a) (1985); therefore, Aetna is liable to him under 29 U.S.C. § 1109 (1985).[6] Section 1104(a) describes, in relevant part, the duties and responsibilities of a fiduciary:

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and beneficiaries; and

(ii) defraying reasonable expenses of administrating the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

. . . . .

(D) in accordance with the documents and instruments governing the plan....

■ To hold Aetna liable for denying him benefits under the plan, Silva must establish that Aetna's decision or conduct was arbitrary and capricious. *Reilly v. Blue Cross and Blue Shield*, 846 F.2d 416, 419 (7th Cir.1988), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1989). The United States Supreme Court has explained the arbitrary and capricious standard in *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). The Court said:

The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of [an ERISA fiduciary]. Nevertheless, the [fiduciary] must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." ... In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." ... Normally, [a decision by a fiduciary] would be arbitrary and capricious if the [fiduciary] has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, of-

---

**6.** Section 1109 provides, in relevant part:
(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each

such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

fered an explanation for its decision that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.

*Motor Vehicle Manufacturers*, 463 U.S. at 43, 103 S.Ct. at 2867.

In the instant case, the accident and health coverage provided under the insurance policy is non-occupational. Pursuant to the policy, an injury is non-occupational "only if it is an accidental bodily injury and does not arise out of (or in the course of) any work for pay or profit nor, in any way, results from an injury which does." The evidence shows that Silva, while at work for Baker Marine, aggravated a pre-existing injury to his foot. Silva notified Baker Marine, the administrator of the Aetna plan.

Aetna's refusal to pay Silva benefits is proper because the insurance policy does not cover his injury. Therefore, a "satisfactory explanation" exists to justify Aetna's action. There is no "clear error of judgment," and Aetna's decision does not run "counter to the evidence" included in the record. We hold that Aetna's refusal to pay benefits was not arbitrary and capricious.

The judgment of the trial court is AFFIRMED.

