**Michael J. TESKEY, Plaintiff-Appellee,**

v.

**M.P. METAL PRODUCTS, INC., et al., Defendants-Appellants.**

**No. 85–3076.**

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1986.

Decided June 30, 1986.

W. Charles Jackson, Michael, Best & Friedrich, Milwaukee, Wis., for defendants-appellants.

Robert A. Bender, Dierker, Bender & Levi, S.C., Watertown, Wis., for plaintiff-appellee.

Before BAUER and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

M.P. Metal Products has a pension and profit sharing plan in which Michael Teskey had vested interests worth almost $80,-000. Section 7.8(a) of the Plan provides that the interest of an employee who leaves the firm "shall be distributable to him at such times and in such form as the [Plan's] Committee in its sole and exclusive discretion shall determine". The normal retirement age given by the Plan is 65. When an employee retires the Plan has the option of paying the whole vested interest or making monthly payments for the life of the person retiring.

Teskey quit in July 1984 when 34 years old and demanded that the Plan pay him the full $80,000. The Plan paid him about $38,000 in two installments but balked at paying more for the time being. Several other employees quit at the same time Teskey did, and the Plan limited the distributions to them as it did to Teskey. The Plan's minutes give this reason:

> Previous distribution requests of $143,-000 were reviewed in light of both planned and potential retirement requests of $1,048,000 within the next year.

> Currently the available cash is approximately $304,000. That is about 13% of the total Plan and the guideline is 10%. Another potential demand for funds is the Villager Motel pending litigation to recover our investment. This could range from $10,000 to $60,000 estimated at this point.

> The Committee discussed and agreed that the Plan from its inception was long range in nature which in the opinion of the Trustees was in the best interest of the Plan and as a consequence in the best interests of the participants, that a number of participants departed the Company's employment precipitously and without cause, that the Plan was not designed to accommodate those who would leave the Company in the above manner, and that in the opinion of the Committee it is imperative that appropriate planning be made for those who are entitled to distribution based on normal retirement, disability, and death (sec. 6), and accordingly that the request for additional distribution by those who quit is denied.

Teskey filed this case in state court, and the defendants removed it on the ground that it must have been founded on § 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132. Teskey sought an order that would compel the Plan to pay his remaining vested interest. The district court granted this relief. After a bench trial, the court concluded that the Plan had

withheld payment only because of its "guideline" that 10% of the Plan's funds be held in liquid assets to cover unanticipated events. Here, the court concluded, the Plan violated its own 10% rule. Whether the Plan had 13% of its assets in liquid form, as its minutes state, or some larger amount (the district court found that it may have had about 20% in "cash equivalency"), it had enough to pay Teskey's remaining vested benefit of about $42,000 without invading the reserved 10%. At the time the Plan's value was about $2.4 million, and Teskey was asking for only 1.75% of the Plan's assets. The unsatisfied demands of all of the resigned employees totalled only $181,660, and the court found that the Plan had sufficient liquid assets to pay this entire sum while retaining its 10% reserve. The Plan therefore violated its own guideline, which the district court thought to be arbitrary and capricious.

The Plan concedes that despite the provision giving the trustees "sole and exclusive discretion" the decision is judicially reviewable under the "arbitrary and capricious" standard. This concession is supported by *Fine v. Semet*, 699 F.2d 1091, 1093 (11th Cir.1983). Our own cases have used the "arbitrary and capricious" standard only in reviewing a plan's decision that an applicant is not entitled to benefits. *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 208–09 (7th Cir.1985); *Wardle v. Central States Pension Fund*, 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). We have not held that questions about when and how to pay out undisputed benefits—as opposed to whether to pay benefits at all—are reviewable under the arbitrary and capricious standard. Section 502(a)(1)(B) of ERISA authorizes a beneficiary's suit "to recover benefits due him under the terms of his plan [and] to enforce his rights under the terms of the plan." The "terms of the plan" in this case leave decisions about timing entirely to the discretion of the trustees. If a decision about timing is reviewable under ERISA, perhaps that review would be limited to preventing discrimination on impermissible grounds. Cf.

*Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242 (7th Cir.1986). Given the Plan's concession we do not pursue the matter. (The question is not one of subject matter jurisdiction, which is supplied by § 502 of ERISA and 28 U.S.C. § 1331.)

The Plan contests the district court's decision on factual rather than legal grounds. The Plan insists that the district court simply misunderstood the nature of the 10% liquid balance. The Plan wants 10% to handle unanticipated events—deaths, losses in the portfolio, and so on. Anticipated events require additional liquid assets, and as the minutes state the Plan was exposed to demands well in excess of the amount of cash it had available. Within the next year people holding more than $1 million in vested benefits would reach or exceed the minimum retirement age, and the Plan contends that it is entitled to keep extra liquid assets to cover these claims.

■ This is not an "arbitrary or capricious" decision in the sense of whimsical, random, or unreasoned. The arbitrary and capricious standard of review is quite narrow. See *Pokratz*, 771 F.2d at 209. All the same, a litigant may not simply announce a rationale and insist that the rationale supports the decision. The rationale may be fine in the abstract but inapplicable to the case at hand. The Plan's difficulty here is that the people holding the million dollars of vested benefits are principally the chief executive officers of the firm. As far as we can tell, none had announced a decision to retire or claim benefits. If any had, the Plan would have been authorized by § 7.8(a) to pay the claim over the expected life of the retiree rather than all at once. The district court did not make a particular finding about whether the Plan reasonably anticipated that the people eligible to claim benefits would do so, but because the Plan did not introduce evidence that any person had notified it of an intention to claim benefits, it was unnecessary to make an explicit finding. The district court's finding that the Plan violated its own guidelines must be sustained unless clearly erroneous. When it is possible to

take two views of the evidence the district court's view is not clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, ——, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). It was possible to take two views here.

■ The district court's view actually was quite favorable to the Plan. The court assumed that only assets held in cash (or money market funds, the equivalent of cash) counted toward the margin of liquidity. The Plan also held a certificate of deposit for $100,000, which could have been cashed without penalty, and common stocks and bonds. In 1984 the Plan held more than $360,000 in stocks and more than $590,000 in bonds. One of the Plan's trustees testified at trial that the stock could be liquidated readily. Cf. *Wisconsin Real Estate Investment Trust v. Weinstein,* 781 F.2d 589, 596 (7th Cir.1986) (traded securities are equivalent to cash in liquidity). Counsel for the Plan informed us at oral argument that the bonds, too, are widely traded; they, too, therefore are almost as liquid as cash. (The Plan does not pay tax, so there is no penalty in selling appreciated securities.) All told, more than two-thirds of the Plan's assets are liquid. This is further support for the district court's view that the Plan's stated reason is arbitrary and capricious.

All this is not to say that a pension plan must pay any claim it is able to pay. A plan may elect to pay none until retirement age, or to adopt some mechanical formula. The district court reviewed this Plan's decision in light of its history of paying in full claims for vested amounts and in light of the feeble justification it gave for the decision not to pay Teskey's vested benefits— or even to give Teskey a schedule of periodic payments in years to come. We hold no more than that the district court's assessment was not clearly erroneous. We would as readily have sustained the opposite decision.

AFFIRMED.