Arthur **LISTER** and Harold **Quick**, Plaintiffs–Appellants,

v.

**H. Allan STARK, James Nugent, Sun Electric Corporation and Sun Electric Pension Trust, Defendants–Appellees.**

No. 89–3563.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1990.

Decided Sept. 10, 1991.

Terrence Buehler (argued), Arthur T. Susman, Terry Rose Saunders, Susman, Saunders & Buehler, Chicago, Ill., Joseph S. Buehler, Franks & Filler, Marengo, Ill., for plaintiffs-appellants.

Alan S. Gilbert (argued), Jay Conison, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, WOOD, Jr. and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Arthur Lister and Harold Quick brought this ERISA action against their former employer, its pension plan, and two managers of the employer (collectively Sun). The district court granted summary judgment in favor of Sun. For the following reasons, we reverse in part and vacate in part the judgment of the district court and remand the case for further proceedings consistent with this opinion.

## I

### BACKGROUND

#### A. *Facts*

This case involves the construction of the definition of "compensation" in the Sun Electric Corporation Pension Plan (the Plan). The Plan defined this term as "regular basic compensation, including salary and ordinary commissions, ... excluding bonuses, overtime and other additional compensation." Plan § 2.12. A participant's retirement benefit was calculated via a formula, the details of which are not pertinent to this appeal, based on the participant's highest-paid thirty-six month period of pre-retirement compensation.[1]

Prior to their early retirement, plaintiffs Arthur Lister and Harold Quick were employed as regional sales managers by Sun. Each previously had worked as a salesman for Sun. The remuneration of Sun salesmen consisted entirely of commissions. These commissions were treated as compensation for purposes of calculating retirement benefits. As regional sales managers, appellants received a base salary, which was lower than the remuneration they had earned as commissioned salesmen and, at least initially, lower than that earned by many of the salesmen they supervised. Regional sales managers also received two other forms of payment: (1) a percentage of the region's net monthly sales (monthly sales percentage), and (2) a percentage of the region's annual profits (annual profits percentage). The rates at which both the monthly sales percentage and annual profits percentage would be paid were set by Sun and announced at the beginning of each employment year. At least one of Mr. Lister's Employee Status Change forms referred to each of these

---

1. For additional details on the benefits formula, see *Lister v. Stark*, 11 Employee Benefits Cas. (BNA) 1611, 1613, 1989 WL 88241 (N.D.Ill. 1989).

additional forms of payment as a "commission." Nonetheless, a regional sales manager's pension was calculated on the basis of base salary alone; the monthly sales percentage and annual profits percentage were excluded from such participants' compensation calculation.

The Plan was administered by a committee consisting of defendant Stark (the company's vice president and general counsel) and other company managers (the Committee). Section 7.4 of the Plan provides in pertinent part:

> The Committee shall enforce the Plan in accordance with the terms of the Plan and the Trust Agreement and shall have all powers necessary to accomplish that purpose, including but not by way of limitation, the following:
>
> . . . . .
>
> (b) To construe the Plan and Trust Agreement;
>
> (c) To determine all questions arising in its administration, including those relating to the eligibility of persons to become Participants; the rights of Participants, former Participants, Pensioners and Beneficiaries, and Employer Contributions; and its decision thereon shall be final and binding upon all persons hereunder
>
> . . . . .

The Plan required a claimant to file an initial benefits claim in writing. *See* Plan § 8.1. If a claim was denied in whole or in part, the claimant could seek review of the decision by filing a written request for review. The Committee's final decision on review was to be "final and binding on all persons for all purposes." *Id.* § 8.2. The Plan included an exhaustion of administrative remedies provision:

> If a Claimant shall fail to file a request for review in accordance with the procedures described in Sections 8.1 and 8.2, such Claimant shall have no right to review and shall have no right to bring

action in any court and the denial of the claim shall become final and binding on all persons for all purposes.

*Id.*

In August 1987, Mr. Lister objected to the calculation of his pension benefits being determined only on his base salary as regional sales manager.[2] Mr. Stark then informed him that his objection would be treated as an initial claim for benefits under section 8.1 of the Plan. Mr. Stark decided that the benefits had been calculated correctly, and his decision was endorsed by the Committee. On November 9, 1987, Mr. Stark wrote Mr. Lister to inform him of the Committee's decision. This letter quoted the Plan's definition of "compensation" and indicated that the calculation of Mr. Lister's pension was consistent with that definition. The letter included nothing, beyond this bare assertion, to support the conclusion that a regional sales manager's monthly sales percentage and annual profits percentage did not fit the Plan's definition of "compensation." Mr. Lister sought review of this decision pursuant to section 8.2 of the Plan. Believing that "I had no further information or documents to give to the Committee as they had a more complete file on my employment and the pension plan than I did," R.24 at 5, Mr. Lister submitted no additional materials to the Committee. The Committee then reaffirmed its denial of Mr. Lister's claim for additional benefits.

Mr. Quick had begun to receive his pension benefits in March 1986, prior to Mr. Lister's attempt to have the defendants include all three components of regional sales managers' remuneration when calculating benefits. He never filed a claim for additional benefits with the Committee. When he learned of Mr. Lister's intention to bring this suit, Mr. Quick decided he also was entitled to a larger pension. He did not seek administrative review because he believed such review "would be a waste of

---

**2.** Mr. Lister apparently never expressly stated in writing that he was objecting to exclusion of his monthly sales percentage and annual profits percentage from the compensation figures used to calculate his pension. His affidavit in sup-

port of the opposition to defendants' motion for summary judgment indicates, however, that he made this objection known to defendants Nugent and Stark in a series of telephone conversations. *See* R. 24 at 3.

time" due to "the fact that Mr. Lister and I were in the same situation and that his claim for additional benefits had been turned down." R.25 at 3.

## B. District Court Proceedings

Plaintiffs Lister and Quick filed a complaint on behalf of themselves and similarly situated Sun employees, seeking a declaration that their retirement benefits should be calculated on the basis of their monthly sales percentage and annual profits percentage as well as their base salary.[3]

The defendants moved for summary judgment. The district court reviewed the actions of the defendants under a deferential standard, indicating that these actions would be upheld unless they were unreasonable. *See Lister v. Stark,* 11 Employee Benefits Cas. (BNA) 1611, 1618, 1989 WL 88241 (N.D.Ill.1989). Because the Plan gave the Committee power " '[t]o construe the Plan and Trust Agreement' " and " '[t]o determine all questions arising in its administration, including those relating to the . . . rights of Participants, former Participants, Pensioners and Beneficiaries[,]' " the district court rejected use of a stricter *de novo* standard. *Id.* (quoting Plan § 7.4(b), (c)).[4]

The court concluded that the Committee's interpretation of the compensation provisions of the Plan was reasonable.

> Even if one characterized the additional manager payments [other than base salary] as a commission, the Committee could regard them as different from "ordinary commissions" paid to salesmen in lieu of salary. . . . It is undenied that the Committee always treated such payments as

excluded from regular basic compensation. . . . The fact that company employees may have referred to the payments as commissions does not bind the administrators of the Plan.

*Id.* The court also found no "abuse of discretion" in the procedures that the Committee followed in denying Mr. Lister's claim. *Id.* In addition, the court concluded that Mr. Quick's failure to exhaust administrative remedies was "fatal to this suit." *Id.* (citing *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244 (7th Cir.1983)). The court rejected Mr. Quick's contention that exhaustion would have been futile because of the denial of Mr. Lister's claim: "Considering the rather skeletal way in which Lister presented his claims, Quick should not be excused from pursuing plan remedies (assuming, *arguendo,* that such excuse is legally permissible)." *Id.* at 1618–19.

The court did not, however, immediately grant Sun's motion for summary judgment. The plaintiffs had contended that the court should not review the defendants' actions deferentially because the Committee consisted of company managers "who hold their positions at the will of the company directors." *Id.* at 1619. The court held that, because ERISA envisions that employers frequently will serve as plan fiduciaries, the composition of the Committee alone was not enough to "create a conflict of interest sufficient to change the standard of review." *Id.* But the court permitted limited discovery to allow the plaintiffs to determine whether the company would have to increase its contributions to the Plan if the higher benefits sought by this suit were to be granted and whether

---

**3.** This count of the complaint also sought a declaration that the defendants had miscalculated early retirement benefits. The complaint contained two other counts: (1) a state law breach of contract count and (2) an ERISA breach of fiduciary duty count. The district court granted Sun's motion for summary judgment as to the early retirement issue. *See Lister v. Stark,* 11 Employee Benefits Cas. (BNA) 1611, 1618–19, 1989 WL 88241 (N.D.Ill.1989); R. 50. The court dismissed the state law count as preempted by ERISA. *See* 11 Employee Benefits Cas. at 1616. Also, reasoning that "a denial of benefits claim [should not] be bootstrapped

into a fiduciary duty claim," the court dismissed the fiduciary duty count as well. *Id.* at 1617; *see* 29 U.S.C. § 1132(a)(1)(B) (authorizing denial of benefits suits); *id.* § 1132(a)(2), (3) (authorizing breach of fiduciary duty suits). Appellants do not challenge these aspects of the district court's judgment in this appeal.

**4.** *Cf. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (adopting *de novo* review in ERISA cases involving plans that give trustees no "discretionary authority to determine eligibility for benefits or to construe the terms of the plan").

the compensation of Committee members was linked to the company's potentially greater contributions. *Id.* After the plaintiffs were unable to substantiate this more specific theory of a conflict of interest, the court granted Sun's motion for summary judgment. The plaintiffs filed a timely notice of appeal.

## II

## ANALYSIS

### A. Construction of the Plan's "Compensation" Term

#### 1. Standard of review

■■ It is well established that review of a district court's grant of summary judgment is *de novo. See, e.g., Doe v. Allied–Signal, Inc.,* 925 F.2d 1007, 1008 (7th Cir. 1991). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). And, as we undertake our task, we " 'must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.' " *Lohorn,* 913 F.2d at 331 (quoting *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir. 1989)). It is also important to remember that, when faced with a motion for summary judgment, the nonmoving party may not rest on its pleadings. Rather, it is necessary for the nonmoving party to demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

■ The parties disagree about precisely how much deference the district court owed to the defendants' construction and implementation of the Plan. The appellants, who apparently have abandoned their earlier contention that nondeferential *de novo* review was required,[5] now argue that the district court should have found that Sun's actions were "arbitrary and capricious." Appellants' Br. at iv. Sun, in contrast, contends that the issue is whether the Plan Committee "abuse[d] its discretion." Appellees' Br. at 1.

This disagreement over terminology reflects the uncertainty within this circuit regarding the interpretation of the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Prior to that case, the standard of review in ERISA cases of this type was arbitrary and capricious.[6] Some panels have interpreted the *Firestone* decision, which adopted *de novo*

---

5. Because section 7.4(b) of the Plan gave the Committee authority to construe the terms of the Plan, the district court correctly refused to apply a nondeferential *de novo* standard of review in this case. *See Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990). *But cf. Sisters of the Third Order of St. Francis v. Swedish American Group Health Benefit Trust,* 901 F.2d 1369, 1371 (7th Cir.1990) (declining to reach question of whether similar plan language was sufficient to avoid *de novo* review).

6. *See, e.g., Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 208–09 (7th Cir.1985) (calling this standard of review "the least demanding form of judicial review of administrative action"); *cf. Reilly v. Blue Cross and Blue Shield United of Wisconsin,* 846 F.2d 416, 419 (7th Cir.) (summary judgment will be reversed if "there is a material issue of fact as to whether Blue Cross' decision was arbitrary, capricious or motivated by bad faith"), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). *See generally* Comment, *The Arbitrary and Capricious Standard Under ERISA: Its Origins and Application,* 23 Duq.L.Rev. 1033 (1985).

Some skepticism about the arbitrary and capricious standard was expressed in this circuit prior to the Supreme Court's decision in *Firestone.* In *Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1049 (7th Cir. 1987) (Posner, J.), the court noted that this term had been equated to " 'totally unreasonable[ ]' " in *Allen v. United Mine Workers of America 1979 Benefit Plan & Trust,* 726 F.2d 352, 354 (7th Cir.1984), and to " 'whimsical, random, or un-

review only for cases in which administrators or fiduciaries have no discretion, as leaving the former standard unchanged for cases in which a plan grants discretion to administrators or fiduciaries.[7] However, at least one panel recently has applied an abuse of discretion standard. *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990). The court in *Fuller* perhaps was reacting to dicta in *Firestone,* where the Supreme Court made the following observations:

> Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. See Restatement (Second) of Trusts § 187 (1959) ("Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion").

489 U.S. at 111, 109 S.Ct. at 954. In the post-*Firestone* era, other circuits also have applied either the arbitrary and capricious standard [8] or the abuse of discretion standard,[9] with at least one court expressly finding the standards "interchangeabl[e]." *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556, 1558 n. 1 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).[10] Similarly, the district court in this case declined

to determine "the difference, if any, between an 'abuse of discretion' standard and an 'arbitrary and capricious' standard." *Lister v. Stark*, 11 Employee Benefits Cas. (BNA) 1611, 1618, 1989 WL 88241 (N.D.Ill. 1989). We are sympathetic to this unwillingness to split semantic hairs. Because the central issue before us is the construction of a disputed term in the Plan, we believe the district court took an appropriate course when it applied the standard found in the dicta from *Firestone:* "A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." 489 U.S. at 111, 109 S.Ct. at 954.

2. Application to this case

■ We are presented with a very narrow question in this case: Does the record before us reveal that there remains a genuine issue of triable fact as to whether the Committee's interpretation of the Plan was unreasonable? This reasonableness standard requires, of course, that this court, like the district court, give great deference to the interpretation of the Committee. Yet, as our earlier cases teach, deference, even great deference, is not the equivalent of no review at all. A fiduciary "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the

---

reasoned[ ]'" in *Teskey v. M.P. Metal Products, Inc.,* 795 F.2d 30, 32 (7th Cir.1986). Judge Posner observed that this standard may be "too lax in some pension cases and too stringent in others." 836 F.2d at 1051. Nonetheless, he reasoned, the standard was

> saved from doing serious harm by its vagueness and elasticity. There are more verbal distinctions among the standards of judicial review than there are real differences.... The fundamental difference in the depth or penetration or exactingness of judicial review is between deferential and nondeferential review, that is, between reversing a tribunal's decision because it is unreasonable and reversing it merely because it is wrong.

*Id.* at 1052.

7. *See, e.g., Rizzo v. Caterpillar, Inc.,* 914 F.2d 1003, 1007–08 (7th Cir.1990); *Egert v. Connecticut Gen. Life Ins. Co.,* 900 F.2d 1032, 1035 (7th Cir.1990); *Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043, 1047–48 (7th Cir.1989); *cf. Exbom v. Central States Health and Welfare Fund,* 900 F.2d 1138, 1141–42 (7th Cir.1990) (arbitrary and capricious standard applies if

"trustee's discretion is completely unrestrained by the language of the trust agreement;" otherwise, somewhat less deferential abuse of discretion standard applies).

8. *E.g., Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 894 (9th Cir.1990) (dicta); *Reichelt v. Emhart Corp.,* 921 F.2d 425, 431 (2d Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991).

9. *E.g., Morales v. Pan Am. Life Ins. Co.,* 914 F.2d 83, 87 (5th Cir.1990); *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1187 (4th Cir.1989).

10. *Cf. Johnson v. Enron Corp.,* 906 F.2d 1234, 1238 (8th Cir.1990) (calling standard "arbitrary and capricious" but using that term as well as "abuse of discretion"); *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990) (indicating that proper standard is abuse of discretion but refusing to "determine how these two standards of review may differ").

facts found and the choice made.'" *Reilly v. Blue Cross and Blue Shield United of Wisconsin*, 846 F.2d 416, 420 (7th Cir.) (quoting *Motor Vehicle Mfg. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (citations omitted)), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). An interpretation will not pass muster under this test when the evidence of record demonstrates that the trustees "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.'" *Id.; see also Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir.1990) (reversing district court finding that defendant had not acted arbitrarily and capriciously in denying plaintiff's claim for medical coverage under an ERISA-regulated plan: "The focus of our inquiry ... must be on the reasonableness of Connecticut General's interpretation in [its internal claims procedure memoranda] of the Plan itself.").

■ The provision of the Plan that the Committee was required to interpret was ambiguous with respect to its application to employee-managers such as the plaintiffs. The disputed methods of remuneration in this case (the regional sales managers' monthly sales percentage and annual profits percentage) arguably fall under the ordinary meaning of a commission, not a bonus. It would be expected, therefore, that the Committee would evaluate the available extrinsic evidence to determine the meaning of the disputed term when the document is read in its entirety. *On this record*, there is, in our view, a genuine issue as to whether the Committee performed such a function. Mr. Stark's November 9, 1987 letter to Mr. Lister asserted that the calculation of Mr. Lister's benefits was consistent with the Plan's definitions, but it failed to explain *why* a regional sales manager's monthly sales percentage and

annual profits percentage should be treated as anything other than "regular basic compensation, including salary and ordinary commissions." Nor does the record otherwise reveal that such an analysis took place.[11] On the other hand, the plaintiffs submit that they were *promoted* from salesmen to regional sales managers—a fact not disputed by the appellees before the district court. Appellants' portrayal of this career move as a promotion is fully consistent with the evidence. As a regional sales manager, each supervised a number of salesmen in a given region. It would be most improbable for one to be made a "manager," with responsibility to "supervise" occupants of the job category one was leaving, unless that career change were indeed a promotion and did not entail a decrease in anticipated pension benefits.

In its brief before this court, Sun submits that the necessary inquiry was not undertaken because the plaintiffs' request was too opaque to place the Committee on notice of the nature of the plaintiffs' contention. As we have noted already, *see supra* note 2, this matter is disputed by the plaintiffs.

In our view, this case was terminated prematurely in the district court. There remains a genuine issue as to whether the Committee adequately considered the issue of interpretation presented to it. Accordingly, further proceedings in the district court are required. We stress, however, that the Committee's decision must be sustained unless it is unreasonable. "Before condemning a decision as arbitrary or capricious a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence." *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985). We conclude only that, on this record, such a determination cannot be made.

### B. *Exhaustion of Remedies*

Appellants also argue that the district court erred in dismissing Mr. Quick from

---

**11.** While the defendants, and the district court, suggest that the Committee's interpretation is validated by its consistency, the record does not contain other instances in which the Committee had been called upon to make such a formal construction of the Plan with respect to the rights of employee-managers.

this suit for his failure to exhaust his Plan remedies. Neither the opinion of the district court nor the submissions of the parties make clear the relevance of this issue in light of the district court's class certification. Accordingly, we vacate this portion of the judgment to permit the district court to reconsider, or at least more fully elaborate, its determination.[12]

### Conclusion

For the foregoing reasons, the judgment of the district court granting Sun's motion for summary judgment is reversed. The district court's dismissal of Mr. Quick as a plaintiff in this suit for failure to exhaust his administrative remedies is vacated. The case is remanded for further proceedings consistent with this opinion. The plaintiffs-appellants may recover their costs in this appeal.

REVERSED IN PART, VACATED IN PART, AND REMANDED

---

12. Although the composition of the certified class is not an issue in this appeal, there is some lack of clarity in the record regarding the precise definition of the class. The class definition given in *Lister v. Stark,* 11 Employee Benefits Cas. (BNA) 1611, 1617 n. 1, 1989 WL 88241 (N.D.Ill.1989), differs from that apparently agreed to by the parties, *see* R. 31, and approved by the district court, *see* R. 32. Upon remand, the district court will have the opportunity to clarify which definition is the correct one.