**Hollis E. JONES, Plaintiff,**

v.

**IRON WORKERS DISTRICT COUNCIL OF SOUTHERN OHIO & VICINITY PENSION TRUST BY AND THROUGH its BOARD OF TRUSTEES, Defendant.**

No. IP 91–C–551.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 23, 1993.

Thomas E.Q. Williams, Greenfield, IN, for plaintiff.

Frederick W. Dennerline III, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, Stephen J. Cahn, Lee J. Hutton, Kenneth M. Haneline, Duvin, Cahn & Barnard, Cleveland, OH, for defendant.

## ENTRY

BARKER, District Judge.

This matter is before the Court to address the defendant's motion for summary judgment and the plaintiff's cross-motion for summary judgment. Upon review of the parties' filings and the record as a whole, the defendant's motion for summary judgment is GRANTED and the plaintiff's cross-motion for summary judgment is DENIED.

## I. Background

From 1964 to 1983, Hollis Jones, a member of the Bridge, Structural and Ornamental Iron Workers Local Union No. 22, labored as an iron worker, rigging, hoisting, and moving presses and other automotive industry machinery. According to Jones, he did "mostly rigging."

On October 11, 1983, Jones suffered a massive heart attack. Shortly thereafter, he informed the Iron Workers Union that he could no longer perform iron worker duties and applied for a permanent disability pension.

On February 11, 1984, Jones signed and submitted to the Pension Trust's trustees a formal Retirement Declaration. The Retirement Declaration provided, in part:

In retiring on a pension from the Iron Workers District Council of Southern Ohio & Vicinity Pension Trust, I declare that I will be bound by all the Rules and Regulations of the Pension Plan; that I will personally endorse each pension check and shall cease being employed or engaged in:

1. Employment as an Iron Worker or in any type of employment which is usually performed by a Building Trades Craftsman; or

2. Self-employment in the same or related business as any employer who contributes to the Pension Fund; or

3. Employment in any job category in any business which is or may be under the jurisdiction of the Union.[1]

Under Section 6.7(a) of the Pension Trust's Summary Plan Description and Complete Test of the Rules and Regulations (hereinafter referred to as the "Plan"), a participant's pension benefits may be suspended under the following conditions:

(i) The monthly benefit shall be suspended for any month in which the Participant is employed in Disqualifying Employment before he has attained Normal Retirement Age. "Disqualifying Employment" for the period before Normal Retirement Age is:

A. employment in work of any type covered by the terms of the Collective Bargaining Agreement in effect between the Union and the Employer, or in any type of work normally performed by iron workers or by building trades craftsmen;

B. employment for an employer in the same or related business as any Contributing Employer;

C. self-employment in the same or related business as any Contributing Employer; or

D. employment or self employment in any work which is under the jurisdiction of the Union.

Jones began receiving his monthly disability pension payments on April 1, 1984. Upon receipt of each monthly disability check, Jones signed and returned to the Pension Trust a statement in which he declared that he was not employed as an iron worker, building trades craftsman, or otherwise employed in an industry under the jurisdiction of the Iron Workers Union.

---

1. The Iron Workers Union claims jurisdiction over "the fabrication, production, erection, and contraction of all ... machinery (moving, hoisting, lowering and placing on foundations)...."

Jones was not idle for long, however. On January 23, 1984, Jones began working for Koenig & Bauer/Egenolf Machine, Inc. (hereinafter referred to as KBE) as a "field service, rigging supervisor," earning from $43,000 to $65,000 a year. KBE is a company that assembles and installs printing presses, including its own line of German manufactured printing presses.[2] The job description of a "field service, rigging supervisor" is as follows:

> Supervise and coordinates activities of workers engaged in installing heavy equipment. Trains new workers on work procedures, safety and company rules. Reviews quotations, work orders, extra work reports, time and equipment records for completeness and accuracy. Supervise and coordinates assemblies and sub-assemblies of printing equipment.

Six years later, in late 1990, the Pension Trust learned of Jones' post-heart attack employment with KBE and the trustees suspended Jones's disability payments. In the letter notifying Jones of this decision, the Pension Trust's trustees stated:

> The Pension Executive Committee in their meeting of Dec. 11, 1990 reviewed information brought before them in regard to your working in covered employment and receiving a Disability Pension from this Trust. Your pension has been suspended and we find that you owe the Fund $27,265.00 for checks received for the months of Sept. 1987 through October 1990. Our records indicated that you worked for Egenolf Contracting and Rigging, Inc.[3] Sept. 1987 through August 1990.

Jones appealed the suspension the following day, stating that "I have never been employed by Egenolf Contracting and Rigging,

Inc.," and requested an appeals hearing, as provided for in the Plan.

Pursuant to Jones' request, the trustees conducted an appeals hearing. At that hearing, when Jones was asked about his employment at KBE or ECR, Jones testified that he had been employed by KBE as a "field service, rigging supervisor" and performed mostly and essentially public relations work, making motel reservations, renting cars, providing "entertainment" (taking wives to dinner), and so forth. Jones admitted, however, that he had reported to the Internal Revenue Service that his job at KBE required him to carry his tools to each job site. Based on these answers and other evidence introduced at the appeals hearing, the Pension Trust's trustees affirmed the suspension of Jones' disability payments.

Shortly thereafter, Jones filed a complaint under 29 U.S.C. § 1132(g) (an ERISA statute), claiming that notwithstanding the trustees' appeals determination, he was entitled to disability payments from the Pension Trust. Jones suggests in his complaint that the Pension Trust terminated his disability benefits not because of any disqualifying employment, but because of his union activity—he hosted a hog roast in support of candidate who subsequently lost a union election. The defendant responded by denying that Jones was entitled to the pension benefits for the time he worked for KBE and by filing a counterclaim against Jones, alleging that Jones must repay those pension benefits he received from the Pension Trust.

## II. Discussion

The defendant moves for summary judgment (requesting the Court to dismiss the plaintiff's complaint and enter judgment on its counter-claim) claiming that the trustees

---

2. Jones retired from KBE in September of 1990 due to worsening heart problems, according to his affidavit, or was fired after he told KBE that he was starting a competing business, according to his deposition.

3. Egenolf Contracting and Rigging (hereinafter referred to as ECR) is a wholly owned subsidiary of KBE, a company KBE established so that competing printing press manufacturers would use ECR and not feel as if they were patronizing their competition. Although KBE and ECR attempted to maintain separate identities, the two both performed field service work, i.e., both were responsible for moving, hoisting, lowering, and placing heavy machinery (printing presses) onto foundations, and had the same employees. For the sake of accounting simplicity, KBE processed all of ECR's payroll through KBE's books. The Iron Workers Union represents a majority of ECR's employees and ECR is a contributing member of the Pension Trust.

made a rational determination that Jones was not eligible for pension benefits from April of 1984 through October of 1990, that the trustees rightfully concluded that Jones' employment with KBE was "Disqualifying Employment," as defined under the Plan. Jones responded to that motion by filing a cross-motion for summary judgment, in which he claims that his employment with KBE did not fall under the Iron Workers Union's jurisdiction and did not constitute "Disqualifying Employment." Jones seeks a *de novo* review of the denial of his disability benefits, and, in the alternative, claims that the trustees' decision to affirm the suspension of his benefits was arbitrary and capricious.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions, and affidavits do not raise a genuine issue of material fact. Federal Rule of Civil Procedure 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

ERISA does not specify a standard of review to evaluate an employer's denial of benefits. However, in light of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Seventh Circuit has held that when a trustee is given the power to construe disputed or doubtful terms of a benefits plan, a trustee's interpretation will not be disturbed if a reviewing court finds that interpretation reasonable. *Lister v. Stark*, 942 F.2d 1183, 1188 (7th Cir.1991) (citing *Firestone* ).

Here, the benefits plan provided:

The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein . . . .

Because the trustees were granted the power to construe any disputed or doubtful terms of

the Plan, as were the trustees in *Lister,* this Court reviews the trustees' application of the Plan under a reasonableness standard; we decline to review that decision de novo. *Lister v. Stark,* 942 F.2d at 1188; *see Bali v. Blue Cross & Blue Shield Association,* 873 F.2d 1043, 1047 (7th Cir.1989); *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir. 1990); *Foster McGaw Hospital v. Welfare Fund of Chicago, Local 786,* 925 F.2d 1023, 1026 (7th Cir.1991).

A reasonableness standard requires this Court to give great deference to the interpretations of the trustees. This Court must determine if the trustees examined the relevant data and articulated a satisfactory explanation for its action, including a "rational connection" between the facts found and the choice made:

An interpretation will not pass muster under this test when the evidence of record demonstrates that the trustees " 'entirely failed to consider an important aspect the problem, offered an explanation for [their] decision that runs counter to the evidence before [them] or is so implausible that it could not be ascribed to a difference in view or the product of [their] expertise.' "

*Id.* at 1189 (citing *Reilly v. Blue Cross and Blue Shield United of Wisconsin,* 846 F.2d 416, 420 (7th Cir.) *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). In other words, a trustee's decision will not be overturned "if it is possible to offer a reasonable explanation, based on the evidence, for a particular outcome." *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985).

Upon review of the trustees' final decision, it is clear to the Court that their decision to suspend Jones' benefits was reasonable. The trustees found that

1. After Jones filed for disability benefits, he started working for KBE as a "field service, rigging supervisor," and, as such, was responsible for supervising and coordinating the activities of workers engaged in the installation of heavy equipment.
2. The Iron Workers Union's jurisdiction includes dealing with machinery, be it moving it, hoisting it, lowering it, or placing it on a foundation.

3. Jones stated on his tax returns that his job at KBE required him to carry his tools to each job site; and

4. Jones' claim that all he did for KBE was arrange hotel accommodations, car rentals, and entertainment for out-of-town guests guest was incredible, particularly in light of his substantial salary.

The Pension Trust's trustees accordingly determined that Jones' employment with KBE constituted "Disqualifying Employment." Because the trustees concluded that Jones' employment at KBE entailed supervising and coordinating the activities of workers engaged in installing heavy equipment (including the assemblies and sub-assemblies of printing equipment), it was reasonable for the trustees to find that Jones' employment with KBE was disqualifying. There is no evidence that the trustees (1) relied on factors which Congress had not intended them to consider, (2) entirely failed to consider an important aspect of the problem, or (3) offered an explanation that ran counter to the evidence or was so implausible that it could not be ascribed to a difference in view or the product of expertise. *See Pokratz v. Jones Diary Farm,* 771 F.2d 206, 209 (7th Cir. 1985). The trustees made a rational determination that Jones' reemployment as a field supervisor was "Disqualifying Employment," as it is defined under the Plan, and this Court will not disturb that decision. *See Allison v. Dugan,* 737 F.Supp. 1043 (N.D.Ind.1990) (benefits review board did not act "arbitrarily or capriciously in suspending a participants early retirement benefit payments on the grounds that he was engaged in "Disqualifying Employment").

Jones's arguments in response to the defendant's motion and on behalf of its cross-motion for summary judgement are unpersuasive. Jones first attempts to establish a genuine issue of material fact about whether the Iron Workers Union had jurisdiction over the type of work performed by KBE; he claims that KBE's workers are under the jurisdiction of the Machinists Union, not the Iron Workers Union. Even though Jones produces affiants who state that KBE's work falls under the jurisdiction of the Machinists Union, that factual determination was decided against Jones at the appeals hearing, and because the president of the Iron Workers Union testified that KBE's work was within the jurisdiction of the Iron Workers Union, that determination was not unreasonable, arbitrary, or capricious.

■ Jones also claims that he did not get a full and fair hearing since his benefits were suspended on one basis but the suspension was affirmed on another; he claims that he thought his appeals hearing would concern whether or not he was employed by ECR, and thus he was blindsided when the appeals board went on a "fishing expedition" to find different grounds on which to affirm the suspension of benefits. Although the Pension Trust at first thought that Jones was employed by ECR, the letter informing Jones of his initial suspension stated that "The Pension Executive Committee in their meeting of Dec. 11, 1990 reviewed information brought before .them *in regard to your working in covered employment* and receiving a Disability Pension from this Trust." (Emphasis added). Jones and his counsel were therefore afforded adequate notice of the initial reason for the suspension of his benefits and were on notice that he had to present evidence to refute the claim that he had engaged in "covered employment." Jones cannot now honestly claim it was a surprise that the appeals board addressed the question of whether he had engaged in "covered employment, hence, "Disqualifying Employment."

■ Jones also fails to establish that he had less than a full and fair opportunity to demonstrate to the trustees that he had not engaged in "Disqualifying Employment." Jones does not claim that he was unable to present his side, only that "he was given very little chance to say anything." [4]

---

4. Jones stated in his affidavit:
   I can only liken that hearing to a "kangaroo court" because I was given very little chance to say anything and the questions that they asked me were repeated over and over with no

let up until they were suggestive of what they wanted. Over and over again I was asked what was my job. I would tell they them more and more and they would isolate part of my answer and try to make it sound silly. The

The persistent core requirements of review intended to be full and fair include knowing what evidence the decision maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

*Brown v. Retirement Committee of Briggs & Stratton*, 797 F.2d 521, 534 (7th Cir.1986). The review procedure must allow a claimant or his representative to:

"(1) Request a review upon written application to the plan; (ii) Review pertinent documents; and (iii) Submit issues and comments in writing."

*Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir.1992) (citing 29 C.F.R. § 2560.-503–1(g)(1). Here, Jones was represented by counsel before the appeals board, had numerous opportunities to explain what he did at KBE, and submitted to the appeals board several exhibits for consideration. It is clear from the appeals board's decision that the trustees considered and based their decision on the evidence presented. Jones has thus failed to establish a genuine issue of material fact regarding whether he had a full and fair opportunity to present his claim.

## III. Conclusion

The issue here is whether Jones has presented a material issue of fact demonstrating that the trustees' decision to suspend his benefits was unreasonable, arbitrary and capricious, or an abuse of discretion. He has not. The evidence demonstrates that the trustees had a factual basis upon which to find that Jones' employment with KBE included the moving, hoisting, lowering and placing of "machinery" onto foundations and that Jones' work with KBE was within the Iron Workers Union's jurisdiction.

Accordingly, the defendant's motion for summary judgment is GRANTED [5] and the plaintiff's cross-motion for summary judgment is DENIED.[6]

It is so ORDERED.

---

attorney for the union at one time said to me, "You were just a high-priced secretary." It was obvious to me the appeal was a sham.

5. In the initial letter of suspension, the trustees informed Jones that he must repay the Pension Trust $27,265, and in the appeals decision, the trustees state, somewhat vaguely, that "you are overpaid by approximately $55,000 representing monthly payments from April 1, 1984 through 1990 ..." The defendant, on the other hand, specifically claims that it is entitled to 78 months of payments (from April of 1984 to September of 1990) at $717.50 a month, for a total of $55,-965.00; plus pre-judgment interest. The plaintiff has not contested this figure or asserted that there is a material issue of fact regarding that amount, and the Court will therefore, in accord with this Entry, enter judgment in favor of the defendant for $55,965.00. The Court declines to award the defendant pre-judgment interest.

6. To the extent the plaintiff requests current and future benefits, that claim has not yet been exhausted—the plaintiff admits that he has not reapplied for pension benefits following his termination/retirement from KBE. *See* Notice of

Additional Issue "Contingently" Requiring Resolution to Afford Relief Under 29 U.S.C. [sic] 1332, at p. 2; *see also* Plaintiff's Complaint, at § 3.6.b. and c. (Plaintiff asks this court to ... [f]ind that [Jones] is entitled to back pension benefits from October 1990 to the date of this court's opinion ... [and] to a continuing period of disability benefit entitlement). It is not clear that Jones' pension benefits would not be reinstated upon his reapplication for benefits from the Pension Trust (since Jones is apparently no longer engaged in disqualifying employment) or that exhaustion of his administrative appeals would prove to be futile. The Court anticipates, however, that Jones may have difficulty before the Pension Trust's trustees reconciling the contradictory positions he has taken in this litigation. For example, in one affidavit, Jones states that "I remained employed by [KBE] until September 1990 when my heart problems became so serious that I could not work at all"; but in his deposition, he states that in response to telling KBE that he was going to quit and form a competing printing press company, KBE first offered him a raise and then fired him ("I was really called on Sunday and fired by Tom Egenolf.")