2 F.3d 1153
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Edward O'CONNELL, Linda Bair, Donald Baker, et al.,
Plaintiffs-Appellants,
v.
CONTINENTAL CAN COMPANY, INCORPORATED, CCC Series 600,
Incorporated, Crown Beverage Packaging,
Incorporated, et al., Defendants-Appellees.
 No. 92-2699.
 United States Court of Appeals, Seventh Circuit.
 Argued April 15, 1993.
Decided Aug. 5, 1993.
 
 Before CUMMINGS, MANION and PAUL H. RONEY, Circuit Judges.*
 
 ORDER
 
 1
 Continental Can Co. (Continental) sold a plant located in West Chicago to Figgie Corporation (Figgie). After the sale, the employees of the plant sued Continental under the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq. (ERISA), seeking to recover severance benefits. The district court granted Continental's Motion to Dismiss, concluding that ERISA did not prohibit Continental's unilateral elimination of the severance plan. The district court also concluded, in the alternative, that because the employees continued in their same jobs when Figgie took control of the plant, they were never laid off or terminated within the meaning of the severance plan. The employees appeal and we affirm.
 
 I. Facts
 
 2
 Continental owned and operated a beverage packaging plant in West Chicago, Illinois. It offered employees of the plant severance benefits as part of the company's pension plan. Salaried employees became eligible for severance benefits upon a "layoff due to permanent plant shutdown" or a break in "continuous service ... as a result of layoff." Hourly employees became eligible for severance benefits when their "regular continuous service [was] broken as a result of a layoff (other than voluntary layoff) for two continuous years." Salaried employees also were eligible for special severance pay if their "position[s]" were "terminated by the Company due to a lack of work, reorganization, or economic conditions." The pension plan expressly gave Continental's Pension Board "sole discretion" to determine eligibility for benefits.
 
 
 3
 On September 27, 1988, Continental entered into an Asset Purchase Agreement whereby it agreed to sell the West Chicago plant to Figgie. In the agreement, Continental stated its intention to discontinue severance benefits for salaried and hourly employees. However, Continental affirmed its commitment to pay all vested pension benefits protected under ERISA. Continental also expressly required Figgie to continue to employ all of the West Chicago plant employees, and to recognize their prior Continental service for the purposes of Figgie's benefit plans. Continental's board of directors approved the agreement on September 28, 1988, and Continental and Figgie closed on the sale of the plant two days later.
 
 
 4
 The employees then applied for severance benefits from Continental, claiming that the sale of the plant resulted in a de facto termination or layoff, even though they kept their jobs when Figgie took over. On February 11, 1991, the Pension Board rejected the employees' claims. The employees then sought relief in the district court; in August 1991, the employees filed this action seeking severance benefits from Continental making basically the same claims as they made before the Pension Board. They sought millions of dollars in layoff benefits, and the salaried employees sought up to six months of severance pay on top of that. Continental filed a motion to dismiss on two grounds. First, Continental argued that because it unilaterally discontinued severance benefits effective before the closing on September 30, 1988, the employees' right to those benefits did not vest when they ceased working for Continental and began working for Figgie. Second, Continental argued, in the alternative, that even assuming the employees had a right to severance benefits, the sale of the plant was not a layoff or termination entitling them to benefits. The district court agreed with Continental on both grounds, and dismissed the complaint accordingly. The district court determined that the employees had no legal claim to benefits, and therefore that the Pension Board did not abuse its discretion in denying benefits. The employees appeal.
 
 II. Standard of Review
 
 5
 The employees initially contend that the district court gave undue deference to the Pension Board's decision. They argue that instead of applying an abuse of discretion standard, the district court should have conducted an independent de novo review of the Pension Board's decision to deny benefits. Continental counters that the district court did in fact conduct a de novo review and arrived at two independent legal conclusions. First, that because severance benefits never vested for plant employees, Continental had no obligation to pay such benefits. Second, that even if such benefits did vest, the sale of the plant was not a layoff or termination prompting the award of benefits.
 
 
 6
 The employees really have no valid complaint about the scope of the district court's review. The district court chose to assess the Pension Board's exercise of discretion by first determining whether the employees had a legal right to benefits. This approach compelled the district court to conduct a de novo review of the Pension Board's decision to deny benefits. Only after the district court independently concluded that the employees had no legal claim to benefits, did the district court defer to the Pension Board's decision. The district court held
 
 
 7
 The administrators of the Continental Employee Welfare Benefits Plan acted in a rational and reasonable manner, in good faith, within their discretion, and in accordance with the documents and instruments governing the plans. Therefore, Continental's refusal to pay these benefits does not violate ERISA.
 
 
 8
 By incorporating de novo review into its assessment of the administrator's exercise of discretion, the district court provided the most comprehensive review possible.
 
 
 9
 Further, any deference which the district court chose to give to the administrator's decision was proper. The plan in this case gives the Pension Board "sole discretion, to interpret the terms of the plan" in order to determine eligibility for benefits. In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the Supreme Court determined that where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the court should defer to that decision. In this case, because the plan expressly gave the Pension Board discretion to determine eligibility for benefits, the district court was correct to defer to that decision. See Lister v. Stark, 942 F.2d 1183, 1185-87 (7th Cir.1991) (the district court correctly deferred to the plan administrator's decision where it had the power to "construe the Plan and Trust Agreement" and "determine all questions arising in its administration," and where "its decisions ... shall be final and binding").
 
 
 10
 On appeal, we review the Pension Board's decision to deny benefits under an abuse of discretion standard. Id. at 1188. Because this matter is before us on an order of dismissal under Rule 12(b)(6), Fed.R.Civ.P., we must ask whether, under the facts of the complaint taken in the light most favorable to the employees, the Pension Board exercised its discretion reasonably. See Lister, 942 F.2d at 1188. Lest the employees argue that such a standard is too favorable to Continental, we shall approach this issue from the direction taken by the district court. We shall first conduct a thorough de novo review of the employees' legal claim to benefits. If, as the district court determined, the employees have no claim to benefits under prevailing ERISA law, then it follows necessarily that the Pension Board exercised its discretion reasonably in denying benefits. Such an exhaustive review is not required for all applications of the abuse of discretion standard. It simply happens to be the most logical way to consider the appeal in this case.
 
 III. Analysis
 
 11
 ERISA sets forth two separate regulatory schemes: one for employee "welfare" benefits and one for "retirement or pension" benefits. 29 U.S.C. Sec. 1002(1)-(2). While ERISA strictly regulates retirement or pension benefit plans, it imposes less stringent requirements on welfare benefits. 29 U.S.C. Secs. 1051, 1081; Young v. Standard Oil (Indiana), 849 F.2d 1039, 1045 (7th Cir.), cert. denied, 488 U.S. 981 (1988). Severance benefit plans are in the category of welfare benefits. Young, 849 F.2d at 1045. Unlike retirement or pension plans, "[a]n employer may ... unilaterally amend or eliminate a severance plan without violating ERISA." Id. This is so because "an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan." Id.
 
 
 12
 The employees in this case concede that the severance benefits in question were welfare benefits and that Continental had the right to amend the severance plans.[1] The employees simply contest the method of amendment. They argue that Continental's commitment to terminate the severance benefits, as stated in the Asset Purchase Agreement, did not amount to a unilateral termination. For whatever reason, the employees ignore the undisputed fact that Continental's board of directors approved the language of the Asset Purchase Agreement--including the amending language--on September 28, 1988, two days before the sale's closing.
 
 
 13
 We have concluded that a company's unilateral elimination of severance benefits occasioned by the sale of one of the company's divisions is reasonable business behavior which does not create liability under ERISA. Young, 849 F.2d at 1045. Here, Continental eliminated the severance benefits in its Asset Purchase Agreement and its board of directors approved the terms of that agreement. The employees concede that "[t]he Continental board of directors has the power to amend under the terms of the plans." Unilateral termination of the severance benefits took place prior to the sale of the plant--the time at which the employees claim the rights to the benefits vested. It is irrelevant that the employees received no notice of the changes, see Young, 849 F.2d at 1045 (the company owed "no legal duty to reveal" the changes in the plan), or that the official language of the plan was not amended until several months later, see Huber v. Casablanca Ind., 916 F.2d 85, 105-106 (3d Cir.1990) (changes in the plan adopted by written resolution of the board of directors were sufficient to amend the plan even though there was no formal change in the language of the plan). Therefore, we agree with the district court that Continental amended the employees' severance benefit plan before the employees could have become entitled to benefits.
 
 
 14
 The district court also determined, in the alternative, that the sale of the plant followed by continued employment did not fit within the definitions of layoff or termination. Consequently, the employees would not have been entitled to benefits even if Continental never amended the plan. We review the district court's interpretation of the terms "layoff" and "termination" as they are used in the ERISA plan by referring to federal common law rules of contract interpretation. Hammond v. Fidelity Guar. Life Ins. Co., 965 F.2d 428, 430 (7th Cir.1992). Federal common law rules of contract interpretation do not deviate significantly from equivalent state rules--we are to interpret ERISA plans in an ordinary and proper sense as would a person of average intelligence and experience, and we construe ambiguities in ERISA plans against the drafter. Id. The question becomes whether the sale of a plant followed by continued employment falls within the ordinary meaning of layoff or termination.
 
 
 15
 There are no ambiguities in the terms "layoff" and "termination"; they are subject to clear interpretation. The "separation from one employer followed by immediate employment with a successor employer" because of the sale of a plant "does not constitute a layoff." Rowe v. Allied Chemical Hourly Employees' Pension Plan, 915 F.2d 266, 269 (6th Cir.1990); see also Blank v. Bethelehem Steel Corp., 926 F.2d 1090, 1093-96 (11th Cir.), cert. denied, 112 S.Ct. 372 (1991); Kotrosits v. GATX Corp. Non-contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1176 (3d Cir.), cert. denied, 113 S.Ct. 657 (1992); cf. Fought v. Evans Products Co. Racine Pension Plan Agreement, 966 F.2d 304, 307 (7th Cir.1992) ("employees let go on the sale of an entire plant are not laid off...."). Nor does the sale of the plant followed by continued employment constitute the termination of a position (as those terms are commonly understood) entitling the salaried employees to severance pay. To conclude otherwise would result in an unintended windfall for the employees. See Sly v. P.R. Mallory & Co., 712 F.2d 1209, 1211 (7th Cir.1983); accord Bradwell v. GAF Corp., 954 F.2d 798, 801 (2nd Cir.1992) ("[I]n the context of the sale of business where the buyer retains the former owner's employees, it would give a windfall to award severance pay to employees who never changed their jobs and were never out of work.").
 
 IV. Conclusion
 
 16
 The district court was correct in its legal conclusion that the employees were not entitled to severance benefits. Indeed, Continental unilaterally discontinued such benefits before the employees would have become entitled to them. In the alternative, the sale of the plant followed by continued employment was not a "layoff" or "termination" as those terms are commonly understood. Because the district court was correct in its legal conclusion that the employees were not entitled to benefits, it did not abuse its discretion in upholding the administrator's denial of benefits.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Hon. Paul H. Roney, Circuit Judge for the Eleventh Circuit, is sitting by designation
 
 
 [1]
 The employees make these concessions in their brief on appeal, where they state
 The employees do not argue here that Continental did not have the right or capacity to amend the plans. Nor do they argue that Continental amended but without sufficient notice to the beneficiaries. Plaintiffs' argument is solely that the plans were not amended before the rights accrued.